NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ARTHUR B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.T., *Appellees*.

No. 1 CA-JV 16-0145
FILED 10-27-2016

Appeal from the Superior Court in Maricopa County
No. JD16700
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge John C. Gemmill[1] joined.

C A T T A N I, Judge:

¶1        Arthur B. ("Father") appeals the superior court's order terminating his parental rights as to his daughter, J.T.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        J.T. was born in December 2011, substance-exposed and very premature.  The hospital suspected her premature birth was caused by substance abuse by Dora T. ("Mother"), who tested positive for cocaine and opiates after giving birth.[2]  J.T. remained hospitalized in intensive care for several months before being released into the custody of the Department of Child Safety ("DCS").  J.T. continues to have physical, mental, and behavioral issues stemming from the circumstances of her birth, and she requires ongoing treatment.

¶3        DCS first made contact with Father when he went to the hospital to visit J.T.  Father was offered services, including drug testing and treatment, psychological evaluation, visitation, parent aide and parenting classes, and medical training from J.T.'s foster mother regarding how to address J.T.'s special needs.  Although Father initially refused to undergo drug testing, he began to comply after several months and he consistently tested negative for drugs.  Accordingly, his referral for drug testing and treatment was closed.

¶4        Father began working with a parent aide in January 2013, but the service was closed unsuccessfully due to lack of contact and lack of

---

[1]        The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        Mother's parental rights have also been terminated, and she is not a party to this appeal.

participation. DCS reestablished parent aide services for Father in January 2014. Father was initially hostile, stating that he was "fed up" and did not want to engage in supervised visits, but he eventually began to participate successfully with the parent aide. Father began transitioning to unsupervised visitation from late 2014 to early 2015, but when DCS put a family reunification team in place in early 2015 to work with Father on understanding J.T.'s special needs, Father did not respond, and the referral was closed.

¶5         In April 2015, Father cancelled several visits on short notice, and DCS became concerned that this was due to Father's inability to care for J.T. without assistance. Although acquiring the medical training necessary to understand and care for J.T.'s special needs was necessary to care for J.T., Father attended only one medical training with J.T.'s foster mother, and he became hostile and volatile during the training. The foster mother offered to train Father at J.T.'s doctor's appointments, but Father refused to reengage. Around the same time, DCS became concerned that Father was dismissive of J.T.'s special needs, particularly when he rejected the idea that she had an eating problem diagnosed by medical personnel. Through mid- to late-2015, Father continued to refuse training to address J.T.'s special needs, stating that there was nothing wrong with her.

¶6         In August 2015, DCS moved to terminate Father's parental rights based on fifteen months' time in care. At the severance hearing, Father admitted that he had been using marijuana for the past year and that he did not have a medical marijuana card. When the court inquired about J.T.'s special needs, Father stated that although he would take her to her medical appointments, he did not believe J.T. had any special needs.

¶7         In a detailed ruling, the superior court found that severance was warranted based on fifteen months' time in care and that severance would be in J.T.'s best interests. Father timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 8-235(A).[3]

## DISCUSSION

¶8         The superior court is authorized to terminate the parent–child relationship if clear and convincing evidence shows at least one statutory ground for severance, and a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v.*

---

[3]         Absent material revisions after the relevant date, we cite a statute's current version.

*Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review the court's severance ruling for an abuse of discretion, deferring to the court's credibility determinations and factual findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶9** The statutory severance ground of fifteen months' time in care under A.R.S. § 8-533(B)(8)(c) requires proof that (1) the child has been in an out-of-home placement for at least 15 months, (2) "[DCS] has made a diligent effort to provide appropriate reunification services," (3) "the parent has been unable to remedy the circumstances" necessitating the out-of-home placement, and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." The relevant circumstances are those existing at the time of severance. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96 n.14, ¶ 31 (App. 2009).

**¶10** Father contends that DCS failed to provide reasonable and adequate reunification services and that that the court erred by finding he would be unable to parent J.T. Father argues in particular that DCS offered "nothing but speculation" that he would be unable to address J.T.'s special needs. Father does not challenge the duration of J.T.'s out-of-home placement, nor does he challenge the court's finding that termination would be in J.T.'s best interests.

**¶11** "The purpose of providing reunification services is to afford a parent the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id.* at ¶ 31 (citation and internal quotation marks omitted). DCS must provide appropriate and reasonable services, but it need not provide "every conceivable service," ensure the parent participates in the services, or undertake any further measures if they would prove futile. *Benningo R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 20 (App. 2013); *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999); *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

**¶12** Father notes that the superior court's findings regarding his inability to care for J.T. focused largely on his failure to acknowledge or understand J.T.'s special medical needs, and he asserts that DCS provided only one opportunity (a training with J.T.'s foster mother) for him to learn about J.T.'s special needs. To the contrary, DCS encouraged Father from the beginning of the dependency to attend J.T.'s medical appointments to learn about (and how to care for) her medical conditions. But Father did

not attend the appointments, and he reacted in a hostile manner in a training with J.T.'s foster mother. And when the foster mother offered to provide additional training in a different environment (at J.T.'s doctor appointments), Father refused. Almost four years into the dependency, Father was unable to even describe the nature of J.T.'s behavioral and medical needs. Although Father suggested that DCS had not provided certain services, such as a family reunification team, the superior court reasonably considered and accepted contrary evidence offered by DCS. *See Jesus M.*, 203 Ariz. at 282, ¶ 12. Accordingly, the record supports the superior court's findings regarding DCS's provision of appropriate reunification services and Father's inability to provide appropriate care.

¶13        Moreover, the superior court reasonably concluded that additional services would be futile. Despite J.T.'s well-documented medical conditions, Father continued to maintain (even through the severance hearing) that he did not think J.T. had any special needs. This, in combination with Father's failure to attend medical trainings and doctor's appointments, provided a reasonable basis for the court's conclusion that Father would not attend training to learn about special needs he did not believe J.T. had. Although Father now asserts that he did acknowledge J.T.'s special needs, we defer to the superior court's weighing of the evidence and resolution of any evidentiary conflicts. *See id.*

¶14        Finally, Father argues that he is a minimally adequate parent, and that DCS acknowledged as much during the severance hearing. But the case worker's testimony on which Father relies is inapposite. The case worker simply acknowledged that, for a period of time (apparently in the wake of Father's completion of parent aide services in fall 2014), DCS authorized unsupervised visitation. And Father's hostile behavior, inconsistency in visiting J.T., and frequent last minute cancellations, in addition to his failure to address J.T.'s special needs, supported the superior court's finding that Father had been and would be unable to parent J.T. Moreover, Father's admission at the severance hearing that he had been using marijuana for the past year, up through the day before the hearing, was of significant concern given the substance abuse issues underlying J.T.'s dependency. Although Father had some successes and made some progress throughout the dependency, the record supports the superior court's conclusion that these behavioral changes were insufficient to justify maintaining the parental relationship. *See Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

¶15        Accordingly, the superior court did not err by finding grounds for severance based on fifteen months' time in care.

## CONCLUSION

¶16  The judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA